# Georgetown National Bank, Executor, etc. v. Ford, Administrator, etc.

(Decided June 25, 1926.)

## Appeal from Scott Circuit Court.

1. Wills.—Under Ky. Stats., section 1404, wife's renunciation of husband's will, duly signed and acknowledged and filed for record within 12 months after probate of will, held not ineffective because not filed until after her death.

2. Wills—Wife's Renunciation of Husband's Will Held Not Ineffective as Conditional by Reason of Provision Therein for Recording After Wife's Death.—Wife's renunciation of husband's will held not invalid as conditional by reason of provision therein for its recordation immediately after death of wife if it occurred before expiration of 12 months from date of probate of husband's will.

BRADLEY & BRADLEY for appellant.

FORD & FORD for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

Fred Stoffel, a resident of Scott county, Kentucky, died October 10, 1923, testate, survived by his wife, Kate Stoffel, and a son, Louis Stoffel, the widow being the second wife of the testator and the stepmother of the latter's son. October 15, 1923, his will was duly admitted to probate by the Scott county court. At the same time the appellant, Georgetown National Bank, of the city of Georgetown, appointed by the testator's will as the executor thereof and being authorized by its charter to so act, by order of the Scott county court, duly qualified as such executor.

The will of Fred Stoffel devised to his son, Louis Stoffel, his farm of 100 acres situated in Scott county, with the provision that he pay to the testator's widow, Kate Stoffel, during her life one-half of the income therefrom, which payments were made a charge upon the farm. The will also devised to the testator's widow for life, with remainder in fee at her death to the son, a house and lot in Royal Springs addition to the city of Georgetown; and, further, after a small bequest to the children of his son of certain stock in a corporation known as the Farmers' Union Supply Company, bequeathed the testator's remaining personal estate to his widow for life, with remainder at her death to the testa-

tor's son, but made the Georgetown National Bank the holder of this personal estate as trustee during the life of the widow.

Kate Stoffel, widow of the testator, Fred Stoffel, after surviving him about two months, died at her home in Georgetown December 13, 1923, intestate, and on the day following, viz., December 14, 1923, there was filed in the office of the clerk of the Scott county court a paper purporting to be a renunciation of the will of Fred Stoffel, deceased, executed October 26, 1923, sixteen days after his death, by Kate Stoffel as his widow. The paper referred to reads as follows:

"KNOW ALL MEN BY THESE PRESENTS:

"(1) That I, Kate Stoffel, widow of Fred Stoffel, deceased, do hereby renounce the provision of the will of my said husband, Fred Stoffel, which was admitted to probate by order of the Scott county court on October the 15th, 1923, and is now of record in the office of the clerk of Scott county court at Georgetown, Kentucky; and I hereby relinquish the provisions of said will and hereby elect to take my dower, statutory exemptions and distributable share in said estate allowed me by law as if no will had been made by my said husband.

"(2) If I should die before having delivered this instrument to the clerk of the Scott county court for record and before the expiration of twelve months from the date of the probate of my said husband's will, in such event I hereby authorize and direct that this instrument be immediately delivered to the clerk of the Scott county court for record as provided by law, in such event this instrument shall have the same force and effect as if delivered for record before my death.

"In testimony whereof, witness my hand this October 26th, 1923.

"(Signed) KATE STOFFEL."

"The foregoing instrument was subscribed and acknowledged by Kate Stoffel to be her voluntary act and deed before us, who, at her request, in her presence and in the presence of each other, have hereunto subscribed our names as witnesses this October 26th, 1923.

"(Signed) E. C. KUTTNER,
"H. C. FORD."

"Commonwealth of Kentucky
      County of Scott.

"I, H. Church Ford, notary public within and for the county and state aforesaid, certify that the foregoing instrument was duly acknowledged before me in said county and state by Mrs. Kate Stoffel to be her act and deed, on October 26th, 1923.

"In testimony whereof witness my hand this October 26th, 1923.

[Seal]                          "(Signed) H. Church Ford,
                       Notary Public Scott County, Kentucky.
             "My commission expires April 12th, 1926."

"Commonwealth of Kentucky
      County of Scott.

"I, L. L. Calvert, clerk of the county court for the county and state aforesaid, do hereby certify that on the 14th day of December, 1923, the foregoing instrument of the renunciation of the will of Fred Stoffel by his widow, Mrs. Kate Stoffel, was produced to me by H. C. Ford, in the county and state aforesaid, and duly proved as required by law by the oath of H. C. Ford, subscribing witness to said instrument of renunciation, which said witness first having been duly sworn by me testified that said instrument of renunciation was signed in his presence and in the presence of E. C. Kuttner, the other subscribing witness thereto by said Kate Stoffel, widow of Fred Stoffel, deceased, and that he, H. C. Ford, as subscribing witness to the said instrument, signed his name as such in the presence of said Mrs. Kate Stoffel and in the presence of E. C. Kuttner, and on this day said instrument was delivered and left with me for record, and the same together with this certificate have been duly recorded in my office.

"In testimony whereof witness my hand this December 14th, 1923. (Signed) L. L. Calvert, Clerk Scott county court.

"A true copy attest:
                          "(Signed) L. L. Calvert,
                       Clerk Scott County Court."

Shortly after Kate Stoffel's death, the appellee, John F. Ford, of Scott county, by an order of the Scott county court, was appointed and duly qualified as the administrator of her estate, and on January 22, 1924, the

present action in equity was brought in the Scott circuit court by the Georgetown National Bank, executor of the will of Fred Stoffel, as plaintiff, against John F. Ford, administrator of the estate of Kate Stoffel, and Louis Stoffel, devisee under the will of Fred Stoffel, as defendants, for the purpose of having determined the rights of the parties under the will of the latter and the instrument executed by his widow, relied on by the administrator of her estate as a renunciation of that will. The petition, after substantially setting forth the facts as above related, alleged that the paper executed by the widow of Fred Stoffel as a renunciation of his will is invalid, for that or any other purpose, but that Ford, as administrator of her estate, by virtue thereof was claiming from the executor of the will of Fred Stoffel the exemption of $750.00, to which it is alleged her renunciation of his will entitled her under the statute as his widow; and, in addition, one-half of the personal estate of the deceased husband remaining after the payment of his debts and costs of administration; while, on the other hand, the testator's son, Louis Stoffel, as devisee under his father's will, was insisting that Kate Stoffel's purported renunciation of the will should be given no legal effect, that her administrator acquired no interest in the testator's estate by reason thereof, and that the whole thereof, after payment of the testator's debts and costs of administration, should be paid to him.

The petition closed with a prayer that the rights of the parties be determined by a judgment of the court directing the executor how to distribute the testator's estate.

The plaintiff later filed an amended petition setting forth with particularity the character, amount and value of the real and personal estate received by it as executor of the will of Fred Stoffel.

As the defendant, Louis Stoffel, son of the testator, though before the court, made no defense to the action we must assume that he, as in the petition alleged, acquiesced in its averments attacking the validity of the renunciation made, or attempted, of the testator's will by his widow, and also in its prayer that the court declare the same void. The administrator of the estate of the widow did, however, make defense to the action by filing a general demurrer to the petition, as amended, and with it an answer and counterclaim, which, without waiving the demurrer, specifically traversed such of the

allegations of the petition and amendment thereto as attacked the validity of the widow's renunciation of the will of the testator, and, in addition, alleged its authorization by section 1404, Kentucky Statutes, and due execution as required by the provisions thereof, which, as further alleged, by reason of the widow's death, entitled the administrator of her estate to be paid by the executor of the will of Fred Stoffel, her deceased husband, besides the exemption of the value of $750.00, allowed a widow by statute, as in case of the deceased husband's intestacy, one-half of the latter's surplus personal estate, or its value, for all of which judgment was prayed against the executor by the administrator on his counterclaim.

It does not appear from the record what action, if any, was taken by the circuit court on the appellee's demurrer to the petition as amended. It does, however, show that a general demurrer filed by the appellant to the appellee's answer and counterclaim, was overruled by the court; that this ruling was excepted to by the appellant; that the latter thereafter refused to further plead; and, also, that the ruling of the court on the demurrer was followed by the submission of the case on the pleadings and exhibits.

Whereupon it was adjudged by the court that the renunciation of the will of the deceased testator, Fred Stoffel, by his widow, Kate Stoffel, as set up in the answer of the administrator of her estate to the petition of the executor of the will of Fred Stoffel, was complete and effective, and that the defendant, John F. Ford, Jr., as administrator of the estate of the deceased, Kate Stoffel, is entitled to receive out of the personal estate of the said Fred Stoffel $750.00, as the widow's exemption under the statute; and, in addition, is entitled to receive one-half of the net surplus of such estate after paying the debts against said estate and costs of administration. The executor of the will of Fred Stoffel excepted to and was granted an appeal from the judgment of the circuit court, his prosecution of which brings it, with such other rulings of that court in the case as may be complained of, to this court for review.

It is the contention of the appellant that a widow cannot legally make a renunciation of her husband's will by an instrument of writing which, though duly signed and acknowledged by her within twelve months after the probate of the will, was not filed or lodged for record

with the clerk of the court in which the will was probated, until after her death.

In support of this contention it is argued by the appellant's counsel that as the instrument of renunciation in question, after its execution by the widow, was placed by her in the hands of her attorney, the occurrence of her death before its delivery by the latter to the clerk for record terminated any and all interest she may have had in the husband's estate, whether it might have been taken by her under the will or was intended to be claimed against it; and that the attorney's filing of the renunciation with the clerk and causing it to be recorded after the widow's death, was but an attempt to transfer to the administrator of her estate the right to renounce the will of the husband; whereas such right was one conferred by Kentucky Statutes, section 1404, upon the widow of the testator alone, who was without authority to delegate its exercise to another.

It is further contended by the appellant's counsel that the renunciation of the will by the widow was invalid, because conditional, the condition being that in the event of her death before, or without making delivery of the instrument to the clerk of the Scott county court for record, its delivery should be made to that officer immediately after her death by another as her agent; it being argued that, as the right of the widow to renounce the will was personal, such right could not be assigned, or its exercise delegated by her to another; but that to be effective for the purpose contemplated it was not only necessary that the instrument of writing containing the renunciation be executed by her in person, but also that it be left with the clerk of the county court for record before her death. These several contentions will be considered in the order presented.

The right of a widow to renounce the provisions of the will of her deceased husband is conferred by section 1404, Kentucky Statutes, which provides:

"When a widow claims her dowable and distributable share of her husband's estate, she shall be charged with the value of any devise or bequest to her by his will; or she may, though under full age, relinquish what is given her by the will, and thereupon receive her dower and distributable share as if no will had been made; but such relinquishment must be made within twelve months after the pro-

bate, and acknowledged before and left for record
with the clerk of the court where probate was made,
or acknowledged before a subscribing witness, and
proved before and left with the clerk; but if, within
said twelve months, an appeal be taken from the
judgment of the county court probating the will,
the widow shall not be required to make such re-
linquishment until within twelve months succeeding
the time such appeal is disposed of. Nothing herein
shall preclude the widow from receiving her dowable
and distributable share, in addition to any devise
or bequest made to her by the will, if such is the in-
tention of the testator, plainly expressed in the will,
or necessarily inferable therefrom.''

The record before us presents no issue between the
parties to the appeal with respect to the following facts,
viz.: That Fred Stoffel died October 10, 1923, and that
his will was admitted to probate October 15, 1923, five
days after his death. That Kate Stoffel, his widow, on
October 26, 1923, sixteen days after his death, executed
the writing purporting to be a renunciation of his will;
that her death occurred December 13, 1923, a month and
17 days after her execution of the instruments of writing
referred to and about two months after the husband's
death; and that on the day following her death, viz.:
December 14, 1923, this writing containing her renuncia-
tion of the husband's will was, as therein directed, filed
with the clerk of the Scott county court for record duly
proved by a subscribing witness, and at once duly re-
corded.

The above facts being admitted by the appellant's
demurrer to the appellee's answer and conceded in argu-
ment by its counsel, clearly establish the performance
of the following distinct acts required by the statute in
the process of renunciation, viz.: (1) That the election
of the widow to renounce the provisions of the husband's
will was made in writing and acknowledged before a sub-
scribing witness within twelve months from the date of
the probate of the will. (2) That the instrument of re-
nunciation was proved and left for record with the clerk
of the court in which the husband's will was probated and
duly recorded in his office within twelve months from the
date of the probate of the will. So the only question to
be determined on the appeal is, whether it is the meaning
of the statute that the widow must be alive at the time
the instrument of renunciation is lodged with the clerk

for record within the twelve months succeeding the probate of the husband's will.

While the language of the statute with respect to the manner of executing the instrument of renunciation and time, succeeding the probate of the will, within which it must be lodged with the clerk of the probate court for record, is mandatory, it nowhere declares in terms or by implication that the instrument must or shall be delivered to the clerk while the widow is living, or that its delivery to that officer shall be made by her in person, or, in the event of her death, may not, within the period prescribed by the statute, be delivered to him by her personal representative, attorney or other agent to whom, while living, she entrusted the performance of such duty. Obviously, as by the provisions of the statute, *supra,* the right to renounce the will is personal to the widow, such right is one to be exercised by her alone; hence, the primary act required of her in manifesting her election to enforce it, is that of executing in writing and acknowledging before a subscribing witness, the instrument of renunciation: and as this act can be performed only by the widow, its performance must, of course, take place during her life, as well as within the period of twelve months from the date of the probate of the will, although there is nothing in the statute that forbids the postponement by her of the execution and acknowledgment of the instrument of renunciation until the last day, or even the last hour of that period.

The widow's exercise of the election and the election thereby made by her are manifested by her execution within the time fixed by the statute of the instrument of renunciation and its acknowledgment by her before an attesting witness, and these acts, when performed by her, constitute the only duties that are required by the statute to be performed by her in person. The attestation of the subscribing witness after the widow's performance of them is required as a means of establishing the authenticity of the instrument of renunciation and its due execution and acknowledgment by her, by the statute made necessary to be proved when, or before, it is left with the clerk for record; and though this proof cannot be made or the instrument recorded until after its execution and acknowledgment by the widow, both must nevertheless be done within the twelve months' period fixed by the statute. And to sustain the contention of

appellant's counsel that the statute requires the widow to be alive and participate in the authentication and recording of the instrument of renunciation would be to read into the statute requirements which are not only unexpressed by its language but also contrary to its obvious meaning.

The question herein involved was decided by this court in the case of McAllister v. Brand's Heirs, 11 B. Monroe 370, in an elaborate and exceptionally well reasoned opinion written by its then chief justice, Thomas A. Marshall. Appellant's counsel attempts, however, to avoid the logic of that opinion by insisting that it is inapplicable to the instant case, because based on a statute then in force that contained no requirement for the recording of the instrument by which the widow renounced the provisions of her deceased husband's will. The statute, however did provide that:

> "She may, within one year from the time of his death, before the court having jurisdiction of the probate of his will as aforesaid, or by deed executed in the presence of two or more credible witnesses, declare that she will not take or accept its provision made for her by such will, or any part thereof, and renounce all benefit which she might claim by said will. . . . "

The points of difference between the two statutes are slight and immaterial. As we have herein fully set forth, the single method whereby the widow's renunciation of the provisions of the will of her deceased husband may be effected under the present statute it will be unnecessary to repeat in this connection its provisions. But under the first or old statute the renunciation had to be effected by the widow within one year from the death of the husband, instead of within twelve months from the date of the probate of his will as required by the present statute, by going before the court in which the will of the husband was probated and there by an order of the court, entered of record, have the renunciation declared or adjudged, or by her making it by deed executed in the presence of two credible witnesses, which by clear implication was required to be attested by the witnesses through whose testimony it could be proved and lodged for record, and like other deeds duly recorded. So it would seem that the first statute by implication required proof and delivery for record in substantially the same

manner required by the present statute. Indeed, it will be found from the opinion in McAllister v. Brand's Heirs, *supra,* that the court's decision of the case was in part based on that assumption.

It appears from the facts stated in the opinion that Brand, who died possessed of a large estate, disposed of it by will wherein he devised to his wife, Elizabeth Brand, for life and in lieu of dower, his residence in the city of Lexington and certain specified personal property, including the dividends on 350 shares of Northern Bank Stock, with power to dispose of the bank stock at her death among the testator's children or grandchildren as she might please, "provided her will is made three months before her death. And in case said dividends do not amount to $2,000.00, a year, the executors are to make up the deficiency." The will then proceeds to distribute the remaining estate among the testator's living children, but limited the estate given his daughter, Mrs. Eliza McAllister, "So as to revert on her death, in case she should leave no child, except her residence, which she is authorized to devise among testator's dependants after the death of her husband. . . . "

On September 12, 1849, the will was admitted to probate in the Fayette county court. From the reading of the will on that day the testator's widow for the first time learned of the inequality of the provision made therein for Mrs. McAlister, whereupon she made a will whereby she bequeathed to the latter 300 shares of the bank stock which had been given her by the will of her husband. Being then in bad health and later advised by her son that if she should die within three months her will might be ineffectual, she thereupon executed the following writing, which was endorsed on her will:

"In the event of my dying within three months after the execution of the within will, there may be some difficulty as to my will's standing good, to prevent which I do hereby, in the event of my dying within three months, renounce the provisions made for me in the will of my deceased husband and claim that there shall be assigned to me out of my husband's personal estate the full value of the bank stock devised to my daughter, Elizabeth H. McAllister; and I hereby give to my said daughter the value of the bank stock in place of the bank stock itself. If I live more than three months from the

execution of my will, this provision is to have no effect.''

Mrs. Brand died December 5, 1849, within three months after the execution of her will and within the same month her will, with the foregoing instrument endorsed thereon, was offered in the Fayette county court and proved and admitted to record.

For the purpose of settling the questions growing out of these acts of Mrs. Brand, an action was brought by the executors and devisees of John Brand against McAllister and wife, the former having been appointed administrator of Mrs. Brand's estate. The case was submitted on agreed facts and also upon evidence heard. One of the questions submitted for decision was, whether the will of Mrs. Brand was effectual to pass the bank stock it devised; and another whether the instrument endorsed on the will of Mrs. Brand was a valid renunciation of the provisions of John Brand's will by his widow. The circuit court held that the will of Mrs. Brand by reason of her death within three months after its execution was ineffectual as an execution of the power given her by the will of her husband to dispose of the bank stock; and that the instrument endorsed upon it was also ineffectual as a renunciation of the provision of John Brand's will by his widow.

On the appeal of the case to this court the efficacy of Mrs. Brand's will was not urged, the only question presented being as to the effect of the writing endorsed on her will intended as a renunciation of the provisions of the will of her husband. In passing upon this question the court reversed the judgment of the circuit court and held the endorsement in question valid as a renunciation by the widow of her husband's will, and that it became effectual by her death; and also that her disposition of the bank stock should be ''carried out in equity.''

The extraordinary length of the court's opinion in that case renders impracticable the insertion in this opinion of much of its sound reasoning, but the conclusions therein reached may be expressed as follows: First, that a widow remained in the mansion house and used property given to her by the will of her husband, and made a will, which is a revocable act, disposing of the property given by the will of the husband, did not preclude her from renouncing the provisions of his will, if done in the manner and within the time prescribed by the

statute. Second, that the motive of a wife for renouncing the provisions of her husband's will, is not a proper subject of inquiry, and does not influence or affect the right. Third, that she may renounce as well for what she may consider a deprivation of power to dispose of what is given her as for a defect in the provision made for her own support and comfort. Fourth, that a conditional renunciation by a widow of the provision made for her by her husband's will made in writing and attested, which is to take effect within the time allowed by statute to make the renunciation, is valid, though the widow die before it be proved and recorded. Fifth, that the widow may make her death the condition on which the renunciation of the provision made for her by the will of her husband shall become absolute, if it happen within the year given by statute for the renunciation. Sixth, that the effect of a renunciation by the widow of the provision made for her by the husband's will, is not to create a right, but to confirm and render absolute a pre-existing right given her by the law. Seventh, that the renunciation by a widow of the provisions of her husband's will is substantially a transfer or surrender by her of her rights under the will to the heirs or devisees of her husband, and in consideration of which she becomes entitled to the provisions made by law for her. Eight, that the renunciation by a widow of the provision made for her by the will of her husband may be upon condition that she die within a period less than one year from the death of her husband, and a transfer made by her will be effectual to pass property which becomes hers by the act of renunciation.

After a careful search we have been unable to find any decision emanating from this court that in any way conflicts with the conclusions expressed in the opinion of the case, *supra*. The cases cited by counsel for appellant certainly do not do so. In one of those cases, Pike County v. Soward, 147 Ky. 37, it was merely held that the husband is bound by the will of the wife unless he elects to take under the statute, and that this right is a personal privilege which his creditors cannot compel him to exercise. To the same effect is the holding in Harding's Admr. v. Harding, Exr., 140 Ky. 277, also relied on by appellant's counsel. On the other hand, the following quotation from the latter case, relied on by counsel for the appellees, supports one of the rules of construc-

tion strongly emphasized by the opinion in McAllister v. Brand's Heirs, *supra.*

>"The right of election does not depend upon the question whether it will be to the interest of the devisee to disclaim what is given under the will. If the sum devised is larger than the amount that would be received by the renunciation, the devisee may yet renounce. And so, if the amount that would be received if an election were made would be greater than the sum devised, the devisee may yet prefer to accept the devise. In short, although the right of election was conferred for beneficial reasons, and its exercise usually depends upon the question of interest, yet when the election is made within the time allowed and in the proper manner, it is wholly immaterial what reason induced the devisee to make the election. Its validity cannot be inquired into. McAllister v. Brand, 11 B. Monroe 370."

Again, in Williams v. Williams, 161 Ky. 155, a case also relied on by counsel for the appellees, it is said:

>"The fact that she (the widow) has got less than the law gives her does not estop her from claiming what the law gives her. There is nothing in the record to indicate that the distributees will be placed in any worse position now than they would have been if the widow had renounced the will on the day that she signed the writing accepting this provision, and there is no reason why the distributees should be enriched at her expense when the statute gives her the right to renounce the will within twelve months." McGrath v. McGrath, Admr., 48 Ala. 246.

We are convinced from the careful consideration we have given the record in this case that it presents no cause for disturbing the judgment of the chancellor, and it is therefore affirmed.